IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 18-00579-5 |
| JEFFREY STAMPS | |

PAPPERT, J.                                                                       January 19, 2021

## MEMORANDUM

Jeffrey Stamps seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court grants the Motion because extraordinary and compelling circumstances and the 18 U.S.C. § 3553(a) sentencing factors support his release.

I

A

i

On January 3, 2020, Stamps pleaded guilty to one count of conspiracy to distribute fifty grams or more of marijuana and methamphetamine and one count of knowing possession with intent to distribute fifty grams or more of marijuana and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)(A), (b)(1)(A), (b)(1)(B) and 846. (Plea Agreement 1, ECF No. 182.)[1] He participated in a drug trafficking organization between January and December of 2018 that distributed both drugs. (Gov't Plea Mem. 4, ECF No. 172.) He primarily trafficked marijuana and took on the role, alongside other organization members, of arranging drug shipments through the mail from suppliers in Los Angeles to the greater Philadelphia area. (Gov't Resp. 2, ECF No. 274); (Gov't Plea Mem. 4). He eventually obtained and planned to distribute

---

[1] Record citations reflect page numbers generated by the Court's electronic case filing system.

methamphetamine. (Gov't Resp 2, 4 n.1.)

Stamps was arrested on December 14, 2018 after law enforcement executed a search warrant at his residence. *See* (Arrest Warrant, ECF No. 6); (Gov't Resp. 2.) During the search, they found a bag containing a quantity of marijuana and a bag containing 305 grams of ninety-nine percent pure methamphetamine alongside a digital scale and baggies in his kitchen. (Gov't Resp. 3.) They also found approximately $600 cash in his pocket, $2,500 cash on top of his dresser and a loaded semiautomatic handgun with a spare magazine and spare ammunition in a shoe box in a closet in his master bedroom. *See* (*Id.* at 3); (Sentencing Tr. 20:19–22, ECF No. 278).

Stamps spoke with law enforcement at his home and in a videotaped session at the FBI. (Gov't Resp. 3.) During these discussions, he admitted to participating in the drug trafficking organization, receiving methamphetamine and marijuana in connection with it and owning the gun found in his home. (*Id.* at 3–4.) He stated he was related to two core members of the organization and explained he was a marijuana dealer but had been caught with his first unmoved shipment of methamphetamine, which the Government confirmed. (*Id.*) He also explained he purchased the gun years before joining the organization for protection but never used it, which the Government also corroborated. (*Id.* at 4.) He alerted agents to two additional packages of marijuana he was expecting and the agent recovered one of them. (*Id.*)

ii

Stamps is a comparatively unique defendant. He completed his high school education and maintained gainful employment for many years as a tradesman and later a heavy equipment engineer. (Def.'s Sentencing Mem. 11, ECF No. 242.) He

spent most of his life providing for his close-knit extended family. *See* (*id.* at 11–13). He had no criminal history prior to joining the drug organization. (Sentencing Tr. 38:1–3.) As soon as he was caught, he was forthright with law enforcement and accepted responsibility for his actions. He was released on bail and spent his time between arrest and sentencing attending weekly counseling, working as a carpenter and participating in Bible study groups. (Def.'s Sentencing Mem. 14–15.) He completed thirteen courses totaling 109 hours of study while in custody after his guilty plea. (*Id.* at 14.)

The Court, defense counsel and the Government recognized Stamps was atypical at his sentencing. Defense counsel referred to his case as one "that really stands out in your legal practice, even after 20 years" because Stamps "is a really good person who made a really bad decision." (Sentencing Tr. 46:25–47:3.) The Government cited his "extraordinary" honesty and cooperation with law enforcement, credibility and reliability, which showed he was "someone who really has come to grips with what they have done, who is set on making a break from between past and future." (*Id.* at 73:2–75:2.)

iii

At sentencing Stamps' advisory guideline range called for eighty-seven to 106 months' imprisonment, though he also faced a ten-year statutory mandatory minimum sentence under both 21 U.S.C. §§ 841 and 846. (*Id.* at 38:5–8.) The Court found Stamps did not possess the gun found at his home in connection with his offense. *See* (*id.* at 32:1–6, 34:3–36:1.) Because of that ruling, Stamps's lack of criminal history and other circumstances of his offense, Stamps qualified for the 18 U.S.C. § 3553(f) safety

3

valve provision and was not subject to the ten-year mandatory minimum. Stamps requested a substantial departure based on "the small space of his full life this crime occupied" and his cooperation with law enforcement, diligent efforts toward rehabilitation and assertion that he already learned his lesson. (Def.'s Sentencing Mem. 4–7); (Sentencing Tr. 49:12–51:8, 53:12–15, 69:15–70:11). The Government agreed Stamps's case "has features that are not fully accounted for in the guidelines and it is . . . a case for the Court to exercise its discretion." (Sentencing Tr. 75:7–9).

The Court sentenced Stamps to twenty-four months' imprisonment followed by five years' supervised release. (Judgment 3–4, ECF No 245). It found Stamps's offense conduct, while intentional and sustained for a period of time, was an aberration based on his history and characteristics. (Sentencing Tr. 82:23–25.) It saw "a lot of good" in Stamps and recognized he would be a productive person upon release. (*Id.* at 83:4–5.)

In considering the 18 U.S.C. § 3553(a) factors, the Court noted Stamps's offense was serious. (*Id.* at 79:10–80:15.) But it found the sentence adequately protected the public and sufficed to deter Stamps from future activity because Stamps was unlikely to reoffend. (*Id.* at 85:18–87:19.) It also adequately punished Stamps because he would be separated from his family and young children for a sustained period. (*Id.* at 86:12–19.) The Court concluded little more than Stamps's experience post-arrest and colloquy with the Court at sentencing was needed to promote respect for the law. (*Id.* at 83:21–25.)

iv

Stamps has been in custody since January 3, 2020. (Minute Entry, ECF No. 181.) He asserts during that time he has "taken all classes available during the

4

pandemic." *See* (Def.'s Sentencing Mem. 21); (Mot. for Release 11, ECF No. 270). He has incurred one minor disciplinary infraction for an unauthorized exchange of money with another inmate for which he was given a suspended sanction. (Gov't Resp. 5.) He has accrued approximately two months of good time credit and his current anticipated release date is September 7, 2021. (*Id.*)

B

i

Following the onset of the COVID-19 pandemic, Stamps unsuccessfully petitioned the warden at FCI Fort Dix for compassionate release. (Mot. for Release 3.) He now moves *pro se* under 18 U.S.C. § 3582(c)(1)(A), arguing the spread of the COVID-19 pandemic in prison, his increased vulnerability to serious illness from COVID-19 due to his obesity and hypertension and his rehabilitative efforts present extraordinary and compelling reasons warranting a sentence reduction. (Mot. for Release 2, 4–9.) He also contends the 18 U.S.C. § 3553(a) factors support his release because he has demonstrated commitment to altering his conduct, his crime was non-violent and he has been assessed unlikely to recidivate. (*Id.* at 11, 16.) He adds "BOP presently has nothing to offer [him] but a cell" because vocational opportunities and correctional programming have been suspended due to the pandemic. (*Id.* at 16.)

Stamps plans to live with his fiancé and three of his children in Upper Darby, Pennsylvania if his Motion is granted. (*Id.* at 17.) He has secured employment as a heavy equipment operator for Tradesmen International, which will provide him health insurance. (*Id.*)

5

ii

Stamps's medical records confirm he has been diagnosed with essential (primary) hypertension and he is obese. *See* (Gov't Resp. 6); (Gov't Ex. A 3, 21, 24, 39, 45, 49, 67, 69, 71, 94, 105, 150, ECF No. 275). The Government represents his BMI has been measured as high as 40.4, which according to the CDC is "sometimes categorized as 'extreme' or 'severe' obesity." *See* (Gov't Resp. 6); *Defining Adult Overweight and Obesity*, Center for Disease Control and Prevention, https://www.cdc.gov/obesity/adult/defining.html (last visited Jan. 19, 2021). He sees medical personnel regularly for his conditions and has been provided appropriate medications as needed. (Gov't Resp. 6.)

The Government "agrees that Stamps' chronic health conditions, when combined with the ongoing COVID-19 pandemic, satisfy the threshold requirements for consideration under Section 3582" and present an extraordinary and compelling reason for potential release. (Gov't Resp. 12, 17.) It "does not contend Stamps would present a danger to the community if released." (*Id.* at 18.) Nonetheless, it argues the 18 U.S.C. § 3553(a) factors do not, on balance, warrant his release. He committed a serious offense and is already serving a below-guideline sentence for his actions. *See* (*id.* at 18.) The Government believes "release at this time would undermine the Court's careful sentencing plan and result in a sentence that does not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence to others." (*Id.*)

II

A

A district court may reduce an inmate's sentence as a form of compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a

reduction"; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission; and (3) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction.  18 U.S.C. § 3582(c)(1)(A).  The applicable Sentencing Commission policy statement requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)" prior to release.  U.S.S.G. § 1B1.13.  Relevant § 3553(a) factors a court must consider include "the history and characteristics of the defendant" and the "need for the sentence imposed—to reflect the seriousness of the offense, . . . promote respect for the law, . . .  provide just punishment for the offense[,] . . . afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1), (2).

B

The Court agrees with the Government that Stamps's medical conditions present an extraordinary and compelling circumstance that may justify his release and finds Stamps does not present a danger to any person or the community based on his presentation at sentencing and continuous rehabilitative efforts in prison.  Having carefully considered the Government's position, the Court also finds that on balance the 18 U.S.C. § 3553(a) factors favor Stamps's release.

Stamps committed a serious offense.  He willingly became an integral participant in a large-scale drug trafficking organization with hardened criminals and was himself a large-scale marijuana dealer.  And although his involvement with methamphetamine trafficking was "relatively limited" (Gov't Sentencing Mem. 10, ECF No. 240), Stamps was complicit in the full extent of his organization's

methamphetamine distribution and eventually intended an active role in the distribution himself.

Nonetheless, Stamps is a first-time offender who has made every effort to rehabilitate before entering custody and while in prison.  By his sentencing, the Court and Government observed he grasped the gravity of his offense and made strides in turning his life around.  He also demonstrated respect for the law, presented as extremely unlikely to recidivate and showed the Court that less than two years away from his family would be sufficient punishment and deter him from future crimes.  *See* 18 U.S.C. 3553(a)(1), (2).  He continued his productive behavior at FCI Fort Dix but-for his minor, non-violent infraction.  Stamps has already faced adequate punishment for his actions, and he will be on supervised release for the next five years.  His stringent release conditions will further promote deterrence and adherence to the law.

An appropriate Order follows.

BY THE COURT:

_____
GERALD J. PAPPERT, J.